(76 South. 438)

## Ex parte WESTERN UNION TELEGRAPH CO. (2 Div. 646.)

(Supreme Court of Alabama. June 7, 1917.)

1. CORPORATIONS ☞666 — ACTIONS AGAINST FOREIGN CORPORATIONS—VENUE—STATUTE.

Code 1907, § 6112, in so far as it provides that actions cannot be brought against a foreign corporation in a county or counties in which the corporation is doing business, is violative of Const. 1901, § 232, fixing the venue of actions brought in Alabama against foreign corporations, and so void.

2. CONSTITUTIONAL LAW ☞48—VALIDITY OF STATUTES.

A court should never declare a statute to be in conflict with the Constitution unless convinced beyond a reasonable doubt that there is such conflict.

3. CONSTITUTIONAL LAW ☞18—READOPTION OF CONSTITUTIONAL PROVISION—EFFECT.

Where a constitutional provision had been repeatedly construed by the Supreme Court when readopted in a later Constitution, it was readopted with the previous judicial construction, and the Supreme Court is bound thereby.

4. CONSTITUTIONAL LAW ☞36—LEGISLATIVE POWERS.

The Legislature may provide statutes to give force, effect, and application to the provisions of the Constitution, but it cannot bend or alter provisions that are self-executing.

Sayre, J., dissenting.

Certiorari to Court of Appeals.

Petition for certiorari to the Court of Appeals on behalf of the Western Union Telegraph Company. Application denied, and judgment of the Court of Appeals (74 South. 88) affirmed.

Forney Johnston and W. R. C. Cocke, both of Birmingham, and Thomas E. Knight, of Greensboro, for appellant. Smith & Morrow, of Birmingham, for appellee.

MAYFIELD, J. [1] The decision of the Court of Appeals in the case in question is correct, notwithstanding it is in conflict with the decision of this court in the case of Alabama Great Southern Railroad Co. v. Ambrose, 163 Ala. 220, 50 South. 1030, and some dicta in other opinions of this court, in reference to section 6112 of the Code; and for

this reason we deem it proper to write an opinion, formally overruling the decision in the Ambrose Case, and correcting the dicta in the other cases referred to, in so far as they conflict with the decision in this case. We are constrained to overrule this case for the reason that our Constitution (section 232) fixes the venue of actions brought in this state against foreign corporations, and the Legislature cannot alter or change the same so as to prevent the bringing of suits against such corporations in any county of this state in which the defendant, at the time, may be doing business. And in so far as section 6112 of the Code attempts to provide that actions cannot be so brought in a county or counties in which the defendant foreign corporation is doing business, it is in conflict with the Constitution, and is therefore void.

The constitutional provision in question does not apply to domestic corporations; to these, of course, the statute can apply, and is not, for this reason, void.

This court has repeatedly expressed the idea and doctrine that courts should be slow to overrule former decisions; that the doctrine of stare decisis should be respected and upheld unless the court is clearly convinced that the decision challenged is erroneous.

[2] We have also repeatedly said, and here reassert the doctrine, that a court should never declare a statute to be in conflict with the Constitution unless convinced beyond a reasonable doubt that there is such conflict. Mindful of, and being guided by, these principles, we must overrule the decision in Ambrose's Case, and declare the statute, to which reference is above made, to be null and void to the extent herein indicated.

[3] It may not be out of place to here state some of the reasons which so impel us. The constitutional provision in question (Const. 1901, § 232) appeared in the Constitution of 1875 in practically, if not literally, the same language; and, as a part of that Constitution, was repeatedly construed by this court. It was therefore readopted with such judicial construction. For this reason we feel bound by the former construction. Statutes similar to section 6112 of the Code were also construed in the earlier decisions, with reference to this section of the Constitution, and the two construed together. It is therefore appropriate that we here quote, in part, what was said in those decisions, which held that the constitutional provision was self-executing, inflexible, and unalterable by the Legislature.

Section 232 of the Constitution provides that a foreign corporation "may be sued in any county where it does business," and it covers this case like a blanket, this court having held it to be self-executing (A. U. Tel. Co. v. W. U. Tel. Co., 67 Ala. 26, 42 Am. Rep. 90; N. E. Mortgage Sec. Co. v. Ingram, 91 Ala. 337, 9 South. 140), and to be both inflexible and unalterable by the Legislature. And if the Legislature cannot bend or alter

200 Ala.—32

it, surely the court ought not so to do. Sullivan's Case, 103 Ala. 377, 15 South. 941, 25 L. R. A. 543.

In the case of N. E. Mortgage Security Co. v. Ingram, supra, this court, speaking through its great Chief Justice Stone, of the same constitutional provision and a similar statute, said:

"The present record raises but a single question. Article 14, § 4, of the Constitution of Alabama ordains that no foreign corporation 'shall do any business in this state, without having at least one known place of business, and an authorized agent or agents therein; and such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in this state.' We have uniformly held that the constitutional clause we have copied is self-executing, without any statute to give it practical operation. Amer. U. Tel. Co. v. W. U. Tel. Co., 67 Ala. 26 [42 Am. Rep. 90]; Beard v. Union & Amer. Pub. Co., 71 Ala. 60; Sherwood v. Alvis, 83 Ala. 115 [3 South. 307, 3 Am. St. Rep. 695]; Dudley v. Collier, 87 Ala. 431 [6 South. 304, 13 Am. St. Rep. 55]; Farrior v. N. E. M. Sec. Co., 88 Ala. 275 [7 South. 200]; Mullens v. Amer. F. & M. Co., 88 Ala. 280 [7 South. 201]; Craddock v. Same, 88 Ala. 281 [7 South. 196]; Christian v. American Freehold Land Mortgage Co., 89 Ala. 198 [7 South. 427]. Possibly this question is now out of the field of legitimate debate."

In Farrior's Case (above cited) 88 Ala. 279, 7 South. 201, the court, speaking of the same constitutional provision and of similar statutes, said:

"The legislative act cannot change the construction or meaning of the constitutional clause under consideration. It may throw light on its construction, and render its enforcement more effective; but it can neither add to, nor take from, the legal significance of its meaning, which was the same before as after the date of the enactment designed to give vigor to its execution."

In Sullivan's Case, 103 Ala. 377, 15 South. 943, 25 L. R. A. 543, the court said, relative to the same subject:

"The material changes, which the Constitution works, are that the corporation becomes liable to suit in any county in which it does business, and the process may be served, compelling it to appear, upon an agent anywhere in the state."

[4] The Constitution having thus in terms required foreign corporations to do certain things, in order to acquire the right to do business in the state, and thus in terms subjected them to liability to be sued in any county in which they are then doing business, and thus conferred on citizens the right to sue them in such counties, it is not competent for the Legislature to relieve the corporations of this burden, or to deprive the citizens of the right so conferred. The Legislature may provide statutes to give force, effect, and application to the provisions of the Constitution, but it cannot, as this court has repeatedly reaffirmed, bend or alter such provisions as are self-executing. Suppose a foreign corporation to be doing business in every county in the state: the effect of the self-executing provision of the Constitution is to authorize suit against such corporation in any county in the state. For the Legislature to say that if the action is for a personal injury the suit

can be brought, not in any one of the 67 counties, but in only 1 of 2—that is, where the injury occurred, or where the plaintiff resides—would be, if not to place restrictions upon the self-executing provision, to apply the pruning knife too freely, to cut off 65 scions of his constitutional tree.

If it were a question of the policy or propriety of the law, we would not be prepared to say that the statute is objectionable in requiring this class of actions to be brought in one of the counties mentioned; but the question before us is not one of policy or propriety, but one of the power of the Legislature to alter or change a self-executing provision of the Constitution.

It is not out of place to say that the provisions of section 232 of our Constitution, providing for the venue of actions against foreign corporations, and for the service of process against them, are not common to Constitutions, being regulations usually fixed exclusively by statute; but, as said above, the policy or the propriety of such provisions is not for the courts. The courts must conform to the doctrine of the old maxim, "Ita lex scripta est."

The application is denied, and the judgment of the Court of Appeals affirmed. All the Justices concur, except

SAYRE, J. (dissenting). I see no sufficient reason for overruling Alabama Great Southern Railway Co. v. Ambrose, or the so-called dicta in the other cases to which the prevailing opinion alludes, but fails to note more specifically. Neither N. E. Mtg. Security Co. v. Ingram, 91 Ala. 337, 9 South. 140, nor A. U. Tel. Co. v. W. U. Tel. Co., 67 Ala. 26, 42 Am. Rep. 90, covers the case considered in Alabama Great Southern Railway Co. v. Ambrose, or the case to be here considered, like a blanket, or at all; this for the very good reason that in those cases the great Chief Justice of that time and his associates were considering only the questions before them, which were, in the first named, whether a foreign corporation had complied with that part of the Constitution which provided that no foreign corporation "shall do any business in this state, without having at least one known place of business, and an authorized agent or agents therein," and in the second named, whether the provision just quoted was in violation of any provision of the federal Constitution. Without exception the cases cited in N. E. Mtg. Security Co. v. Ingram dealt only with the constitutional provision requiring a known place of business and an authorized agent or agents in this state. The case of Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 South. 941, 25 L. R. A. 543, is cited as bearing upon the question of venue here at issue. At the time of that decision the statute was in this form:

"A foreign or domestic corporation may be sued in any county in which it does business by agent."

I do not consider it necessary to go into an elaborate statement of the opinion in that case. It speaks for itself. This much, however, I will say by way of emphasizing the fact that I deny no single proposition to be found therein: The whole trend of the opinion, as I read it, shows that the court had under consideration the constitutional provision, and more particularly of course that part of it which relates to agents and places of business, as laying down the conditions upon which foreign corporations might do business in this state, and never for a moment conceived the idea that the framers of the Constitution had placed a venue statute in that instrument. These conditions, the court said, were inflexible and unalterable. I agree. Of the venue statute, as it then was, the court said:

"The words of the statute are plain and unambiguous. There is no room for construction or interpretation, or for an inquiry into the policy of the provision, or the motives which it may be supposed induced its adoption."

And then the court announced its conclusion on the only question there at issue as follows:

"We are constrained to the conclusion that a foreign corporation, having a known place of business in the state, is not subject to a personal action, in a county beyond such place of business, unless, at the time of the commencement of suit, it was doing business in such county."

In other words, recurring to the force and effect in and of itself of the provision in regard to the liability of foreign corporations to suit in this state, I understand the Constitution to intend merely to lay down the proposition that, as a condition of being permitted to do business in this state, they may be sued, must be suable, in the county where they have a designated place of business or in any other county where they do business. But the Constitution, as I read it, does not say, nor does it necessarily imply, that the Legislature of this state, addressing itself to suitors against foreign corporations in its courts, as the present statute does (Code, § 6112), may not say to them that:

"All actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence."

I cannot see that any constitutional right of the suitor or the foreign corporation in such case is invaded. While, as for the authorities, so far from there being an array of cases asserting the doctrine of the majority opinion, the only case on the point is Alabama Great Southern Railway Co. v. Ambrose, supra. The opinion in that case shows that the very point here raised by the Court of Appeals—not the parties to this cause—was litigated in that case. The judges who sat in that case could not have been ignorant of the cases now cited by the majority, but, without alluding to them, the court said:

"The fact that the first clause of the section [of the statute], and section 232 of the Constitution of 1901, provide generally that a corporation *may* be sued in any county where it does business by agent does not in the least affect the particular provision that in this class of cases [actions for personal injuries] the action *must* be brought in the counties designated" [italics supplied].

I see no good reason for denying the power of the Legislature in the premises. Certainly no case heretofore has held that the Legislature had not the power to do what it has done.

Entertaining this view, I will state also my opinion in respect to the question presented to the Court of Appeals and brought here by this application for a writ of certiorari.

In its opinion on rehearing in this case (Western Union Tel. Co. v. Morrison, 74 South. 88, 15 Ala. App. 532) the Court of Appeals receded from its first position, saying: "The Constitution (section 232) fixes the venue of suits against foreign corporations that have qualified to do business in this state in this language: 'Such corporation may be sued in any county where it does business,'"

—and reached the conclusion that the demurrer to the defendant's plea in abatement was properly sustained, thus seeming by implication to hold section 6112 of the Code, in so far as it provides that "all actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence," to be unconstitutional. But this court had ruled in Alabama Great Southern Railway Co. v. Ambrose, 163 Ala. 220, 50 South. 1030, that section 232 of the Constitution did not, in the least, affect the particular provision of the act of March 3, 1903, which has become section 6112 of the Code of 1907.

In Hatcher v. Southern Ry. Co., 191 Ala. 634, 68 South. 55, this court held that a "personal injury," to come within the purview of section 6112, need not be a direct physical hurt to the body, but that injuries to the person or personal injuries comprehend mental distress, annoyance, inconvenience, humiliation, and such other manifestations of disturbed or perturbed feelings as ordinary persons are supposed to be subject to. That was an action ex delicto. In the instant case plaintiff, having an option to sue in tort or contract (Western Union Tel. Co. v. Krichbaum, 132 Ala. 535, 31 South. 607), has adopted the latter alternative (Wilkinson v. Moseley, 18 Ala. 288), thus identifying the gravamen of his action with the defendant's alleged breach of its contractual obligation, its alleged undertaking or promise, to deliver plaintiff's message.

If the question at issue, the sufficiency of the plea in abatement, could be determined on reasons of practical convenience alone, the further conclusion reached by the Court of Appeals, that "the suit is, in theory and substance, an action on contract, and," ap-

parently for that reason, "not an action for personal injuries within the meaning of section 6112 of the Code," might be accepted as a satisfactory solution. But there are legal difficulties behind that view which appear to me sufficient to prevent its adoption. For example, section 5329 of the Code provides that:

"All actions ex delicto * * * may be joined wtih actions ex contractu arising out of the same transaction, or relating to the same subject matter."

Code, § 6112, reads:

"A foreign or domestic corporation may be sued in any county in which it does business by agent; but all actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence."

Now, if plaintiff had joined counts in tort. and in contract, as he had a right to do, the question would arise: By what part of the section quoted above and on what considerations must the venue of the action be determined? If it be assumed that the section in its provision for "all actions for personal injuries" contemplates only actions in form ex delicto, it is manifest that the venue of actions against corporations for personal injuries cannot be determined by reference to the form in which they are cast, because they may take either form, and yet may be joined; and, not only so, but there is no very considerable reason of practical convenience why an action in one form should have a venue different from an action in another form, but arising between the same parties and out of the same transaction. I conclude, therefore, that section 6112 is not concerned about forms of action, but about the subject-matter of complaint, and that the venue of the action in the instant case is determined on the face of the statute by two considerations only, viz. that a corporation is sued, and that the complaint claims damages for a personal injury. My opinion is that the effect of these considerations is not to be changed by the circumstances that in actions ex contractu damages for mental anguish are recoverable only in superaddition to some damage to the plaintiff's estate. Western Union Tel. Co. v. Rowell, 153 Ala. 295, 45 South. 73. The damage to estate in actions of this peculiar character are generally nominal and the practical basis of recovery is the mental anguish suffered.

The Court of Appeals has well written that:

"The words 'injury' and 'damage' are not infrequently confounded and used loosely as synonymous or interchangeable, whereas in strictness they are widely variant, bearing to one another the relation of cause and effect; the 'injuria' being the unlawful invasion of one's rights of property, whereas the 'damnum' is the extent or measure of that invasion. So that, if technical significance be given the words of the statute, 'where the injury occurred, it would * * * mean where the cause of action arose; in the instant case meaning the default in the delivery

of the message, which was in St. Clair county." 74 South. 92.

But I do not concur in the court's further opinion, first expressed, that the Legislature employed the phrase "where the injury occurred" as meaning "where the damage occurred," and as we have seen, though that opinion was in my judgment necessary to support the ruling in the trial court, it was abandoned by the Court of Appeals on rehearing.

Speaking generally, words are to be taken in their natural and proper sense, which implies that technical words are to be construed according to their technical meaning, unless the context indicates a different construction. Young v. Kinnebrew, 36 Ala. 97; Ex parte Vincent, 26 Ala. 145, 62 Am. Dec. 714; Shuttle & Weaver L. & I. Co. v. Barker, 178 Ala. 366, 60 South. 157. And, more specifically:

"We are to ascertain the true meaning of the Legislature in the use of the words of their statute, and we are to consider them, when legislating upon subjects relating to courts and legal process, as speaking technically, unless from the statute itself it appears that they made use of the terms in a more popular sense." Merchants' Bank v. Cook, 4 Pick. (Mass.) 405.

I have already conceded that "injury" may, in common speech at least, be used as meaning "damage"; but the rule of construction to which we have referred, and as well practical considerations of obvious moment, would seem very clearly to support the conclusion that by the phrase "in the county where the injury occurred" the Legislature intended to indicate the county in which the cause of action arose. This is a rule of definite meaning, whereas, to hold that the statute intends that an action may be maintained wherever the actionable consequences of the wrong and injury done may be felt would render the language of the statute obscure and uncertain to the last degree. The evident purpose of the statute is to require that suits against corporations for personal injuries shall be brought in some county in which the defendant corporation does business, and upon this limitation another, that such actions must be brought in the county where the injury occurred or in the county where the plaintiff resides; but, if the construction be adopted that such suits may be brought wherever the damage or any part thereof is suffered, wherever the consequences of the wrong and injury are felt, or any part thereof for which the plaintiff is entitled to compensation, then the venue of the action is altogether uncertain, and would ambulate from county to county with the person of the plaintiff, and wholly without regard to one clear idea of the statute, which is that the action must be brought in some county in which the defendant does business. As the Court of Appeals observed in its first opinion:

"In giving effect and operation to the legislative intent, instances will readily occur to the mind where it would be difficult, if not impossible, to localize the damages, as might readily be done with regard to the tort or cause of action, e. g., the mental anguish of the sender of a death message might be suffered in a half dozen counties by reason of the deprivation of comfort and consolation on a funeral train."

And, it must be observed, the statute does not apply to cases against telegraph companies only, but to all domestic and foreign corporations doing business in this state, and must be accommodated to the circumstances of all possible wrongs and injuries done by them. And it is not inappropriate to say further that the court is not concerned with the wisdom of the statute or any ulterior legislative motive that may have dictated its enactment. Effect must be given to the statute according to its language and the customary rules of interpretation.

This action was brought in the circuit court of Hale. Defendant's plea in abatement, framed to meet the requirements of section 6112 of the Code, alleged that the injury complained of did not occur, nor did the cause of action arise, in Hale, nor did the plaintiff at the commencement of his suit reside in Hale, but did reside in St. Clair, in which last-named county defendant was doing business by agent. The demurrer to this plea should have been overruled.

Some argument is advanced against the complaint on the ground that it fails to show clearly that the person actually sending the telegram was acting as agent for the plaintiff. The Court of Appeals has disposed of this contention by saying that the demurrer did not take the point, and that the complaint was good as against the demurrer filed. It is not made to appear that the court's manner of dealing with this question involved error, and I leave the matter to rest where the Court of Appeals left it.

For these reasons, I think the writ of certiorari should be awarded, and judgment of the Court of Appeals reversed.